2015 ND 300

**Kory CLARK, Plaintiff and Appellant**

v.

**FARMERS UNION MUTUAL INSURANCE**

and

**QBE Americas, Inc., Defendants and Appellees**

**No. 20150199.**

Supreme Court of North Dakota.

Dec. 22, 2015.

Marianne O. Knudson, Grand Forks, ND, for plaintiff and appellant.

Tyler J. Siewert, Bismarck, N.D., for defendant and appellee Farmers Union Mutual Insurance.

Jeanne H. Unger (argued) and Steven M. Sitek (appeared), Minneapolis, Minne-

sota, for defendant and appellee QBE Americas, Inc.

SANDSTROM, Justice.

[¶ 1] Kory Clark appeals the summary judgment dismissing his claims for breach of contract. He argues the district court erred in granting summary judgment and holding he was not entitled to coverage under a farm liability policy. He also argues the district court should not have dismissed his claim for breach of duty to defend. Because we conclude the district court correctly held Clark failed to present evidence sufficient to raise genuine issues of material fact in regard to his claims, we affirm the judgment.

I

[¶ 2] In January 2010, Clark received a telephone call around 3 a.m. from his brother asking for assistance with his pickup, which was stuck in a snowdrift. According to Clark's deposition, after the brothers were unable to pull the pickup out of the snowdrift, he drove to their grandfather's nearby farm to get a tractor to pull it out. Clark stated that after proceeding a short way down the road, the tractor broke down and he was unable to get over to the shoulder of the road or restart it. He then walked back to the farm to get his pickup and pick up his brother, who took him home and said he would take care of the tractor. Before the tractor was removed from the road, Rita Fred collided with it while driving to work. Fred sued Clark and his grandfather to recover for her injuries.

[¶ 3] At the time of the accident, Clark's grandfather had a farm liability policy with Farmers Union Mutual Insurance. Farmers Union defended the grandfather in the action brought by Fred, but declined to defend Clark, claiming he was not insured under the policy. Clark

sought a declaratory judgment that Farmers Union had a duty to defend or indemnify him. He also sought damages for bad-faith refusal to defend. QBE Americas, Inc., joined as the third-party claims administrator for Farmers Union. Both Farmers Union and QBE moved for summary judgment, which the district court granted.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 5] Clark argues the district court erred in granting summary judgment and finding he is not entitled to coverage under the farm liability policy. Specifically, he argues the court was wrong when it held that because the accident did not occur on an "insured location" and because he did not qualify as an employee of his grandfather's under the policy, he was not entitled to coverage.

[¶ 6] We review a district court's grant of summary judgment de novo. *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 8, 816 N.W.2d 31. "A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion...." *Id.* (quoting *Myaer v. Nodak Mut. Ins. Co.*, 2012 ND 21, ¶ 9, 812 N.W.2d 345).

[¶ 7] The interpretation of an insurance contract is a question of law fully reviewable on appeal. *Id.* at ¶ 9. We

independently examine and construe the insurance policy to decide whether the district court erred in its construction. *Grinnell Mut. Reinsurance Co. v. Thies*, 2008 ND 164, ¶ 7, 755 N.W.2d 852. The rules regarding insurance contract interpretation are well-established:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction.... While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured.

*State of North Dakota v. N.D. State Univ.*, 2005 ND 75, ¶ 12, 694 N.W.2d 225. "The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others." *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898.

### A

[¶ 8] Clark argues the district court erred in finding he is not entitled to coverage under the farm liability policy. He claims the court erred when it held the accident did not occur on an "insured location" and when it held he did not qualify as an employee of his grandfather's under the policy.

[¶ 9] The farm policy issued to Clark's grandfather in this case states:

1. Insuring agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any insured against any suit seeking those damages.... We may at our discretion investigate any occurrence and settle any claim or suit that may result.

[¶ 10] The policy defines "Insured" to include:

13. Insured

....

b. Insured also means any of your employees ... but only for acts that:

....

(2) Are within the scope of the employee's employment by you....

....

e. Insured also means any person using a vehicle on the insured location with your consent, provided this insurance applies to the vehicle.

[¶ 11] "Insured location" is defined, in part, as:

15. Insured location means:

a. The farm premises (including grounds and private approaches) and residence premises shown in the Declarations;

b. The part of other premises, or of other structures and grounds, that is used by you as a residence and:

(1) Shown in the Declarations; or

(2) Acquired by you during the present annual policy period for your use as a residence;

c. Premises used by you in conjunction with the premises included in a. or b. above;

## B

[¶ 12] Clark argues there is sufficient evidence to hold he is entitled to coverage as an employee of his grandfather's. He argues summary judgment was improper because material issues of fact exist regarding his employment status and those issues should have been decided by a jury. In support, Clark argues there was ample deposition testimony that he and his brother worked on the farm and rotated the chores on a weekly basis. He claims that since the time he began doing these chores, it was always understood that being provided with items such as a vehicle, insurance, fuel, clothing, and food was in exchange for his work on the farm. Clark's father stated in his affidavit that had Clark decided not to help out on the farm, he would have had to find other employment to pay for these items. Clark claims the testimony given in the depositions and affidavits is sufficient evidence of his being an employee of his grandfather's farm and is more than "a mere assertion with no support in the record."

[¶ 13] The insurance policy explicitly states that coverage is provided for employees only for acts that are within the scope of the employee's employment. The deposition testimony and affidavits presented to the district court made clear that Clark's use of the tractor on the day of the accident had nothing to do with any work on his grandfather's farm. Clark was using the tractor in the early morning hours to pull his brother's pickup out of a ditch where it was stuck. This use of the tractor did not in any way benefit Clark's grandfather or the farm operation. Clark also conceded he was not performing any act directly related to farming on the day of the accident.

[¶ 14] On the basis of this testimony, the district court held Clark was not an employee of his grandfather's, nor was he acting within the scope of any alleged employment at the time of the accident. The court specifically stated, "The evidence is that Kory Clark may have helped out on the farm at times, as would be expected from a family member, but that he was not a 'farm employee.'" Even if we assume for purposes of this opinion that Clark was an employee on his grandfather's farm, he was not acting within the scope of any employment at the time of the accident. The district court properly concluded Clark was not an employee acting within the scope of any employment for purposes of his grandfather's insurance policy.

## C

[¶ 15] Clark also argues the district court erred in concluding he did not qualify for coverage because the accident did not occur on an "insured location" within the definition of the policy. The policy provides coverage for "any person using a vehicle on the insured location with your consent, provided this insurance applies to the vehicle." Clark argues the public road should be considered part of the "insured location" in this case.

[¶ 16] The insurance policy issued by Farmers Union defines the term "insured location" as the "farm premises (including grounds and private approaches) and residence premises shown in the Declarations; ... and premises used by you in conjunction with ..." those premises. Clark argues the road where the accident occurred was used by the family to access farm property and therefore was used in conjunction with the premises. Both parties cite case law in other jurisdictions dealing with whether or not the term "premises" in an insurance policy includes a public road. The policies involved in the cases cited by Clark differ factually and include language not found in the Farmers Union policy. He cites one case, however, decid-

ed by the Supreme Court of Kansas that is similar to his own case.

[¶ 17] In *Farm Bureau Mut. Ins. Co., Inc. v. Kurtenbach*, 265 Kan. 465, 961 P.2d 53, 57 (1998), the Supreme Court of Kansas held a public highway separating two tracts of land was considered part of the insured premises. The public highway at issue in *Kurtenbach* directly split two tracts of the farmer's land. To access the other side of the property, the public highway had to be crossed. Because of this, the court held the accident occurred on insured premises even though it was a public highway. The court, however, made clear "it would be unreasonable for Kurtenbach to assume that . . . his Farm Master policy provided coverage for an accident that might occur as he was operating . . . on a road to reach a tract of land several miles away. In that case, he would be utilizing a public road much as any registered, licensed vehicle to travel from one destination to another." *Id.* at 57. The court found coverage in this case only because traveling across the highway was a necessary part of the farming operations. *Id.* at 57–58.

[¶ 18] Here the accident occurred because Clark attempted to use the public road to travel from one destination (the farm) to another (his brother's stuck vehicle several miles away), not because he was crossing the road to get from one parcel of the insured farm property to another parcel of the insured property. Additionally, the accident occurred approximately half a mile down the public road from the private approach to the farm, and beyond the point where the insured's farmland ran alongside the road. Therefore, while Clark compares his case to the facts in *Kurtenbach*, it is distinguishable from his own.

[¶ 19] Clark essentially argues any land used in connection with the farming operation should fall within the definition of "insured location." The district court recognized that under this logic "there would be virtually no limit on what roadways would be considered part of the premises." The court went on to state, "It needs to be remembered that the farm liability policy exists to protect farm property and employees. The Court concludes that the accident did not take place on the insured location." The district court did not err in holding that the public road where Fred's accident occurred was not part of the "insured location." The district court properly granted summary judgment in favor of Farmers Union and QBE.

## D

[¶ 20] Clark also argues the district court erred in dismissing his claim for breach of duty to defend. His argument in this regard is similar to that above in that he claims, because he qualifies as an insured under the farm policy, Farmers Union has a duty to defend him. The insurance agreement in Farmers Union's policy states Farmers Union "will have the right and duty to defend any insured against any suit" seeking damages for bodily injury. This language makes clear that for Farmers Union to have a duty to defend in a lawsuit, the suit must be against the insured.

[¶ 21] As detailed above, the district court concluded Clark did not qualify as an insured in this case. The district court did not err in making this determination. Farmers Union and QBE therefore have no duty to defend Clark, and this claim was appropriately dismissed. *See Midwest Cas. Ins. Co. v. Whitetail*, 1999 ND 133, ¶ 11, 596 N.W.2d 341.

## E

[¶ 22] The court properly granted summary judgment in favor of Farmers Union and QBE.

## III

[¶ 23] Because the district court did not err in concluding Clark failed to present evidence sufficient to raise genuine issues of material fact in regard to his claims and summary judgment was appropriate as a matter of law, we affirm the district court judgment.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.