2004 ND 147

## NATIONWIDE MUTUAL INSURANCE COMPANIES, Plaintiff and Appellee

v.

## Victor LAGODINSKI, Defendant and Appellant.

### No. 20030334.

Supreme Court of North Dakota.

July 22, 2004.

Troy A. Wolf, Smith Bakke Oppegard Porsborg & Wolf, Moorhead, MN, for plaintiff and appellee.

Duane A. Lillehaug, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Victor Lagodinski appeals from summary judgment granting declaratory relief to Allied Mutual Insurance Company, now known as Nationwide Mutual In-

surance Company ("Nationwide"). We affirm.

## I.

[¶ 2] Lagodinski lives and farms in La-Moure County. As a part of the farming operation, Lagodinski employed Grant Kleven as a seasonal employee. On May 22, 2000, Kleven was transporting water and chemicals from Lagodinski's farmstead to a field in a 1970 Kenworth semi-tractor/trailer owned by Lagodinski. The Kenworth was being used to transport water and chemicals between the farmstead and fields on a public highway. The Kenworth was not registered as a motor vehicle nor was it insured. As Kleven turned onto Highway 13, he struck a motorcycle traveling eastbound driven by Lucas Klettke. Klettke sustained bodily injury including a concussion and broken leg. Klettke filed suit against Lagodinski alleging negligence under respondeat superior.

[¶ 3] Lagodinski asserts the incident should be covered under a farm policy issued to him by Nationwide. Lagodinski argues the farm policy should cover the incident because the policy provides coverage for occurrences arising out of the farm operation. The policy does not provide liability coverage for bodily injuries arising out of the use of a motor vehicle, unless the vehicle is not subject to motor vehicle registration because it is used exclusively for farm purposes. Lagodinski argues the Kenworth was adapted to be used solely for farm purposes; thus, the terms of the policy should be construed to provide coverage.

[¶ 4] Lagodinski argues the semi was not required to be registered as a motor vehicle because it was not driven outside of the farmstead until the day of the accident. At the time of the accident, nineteen of Lagodinski's motor vehicles were insured under a policy issued by Farmers' Insurance Group; however, the Kenworth involved in the accident was not listed on the motor vehicle policy.

[¶ 5] Nationwide argues the terms of the policy do not provide coverage for Klettke's claims against Lagodinski; Nationwide asserts the plain language of the policy does not provide coverage for the Kenworth because it was subject to motor vehicle registration under North Dakota statute.

## II.

[¶ 6] This Court stated its review of summary judgment in *Ritter, Laber & Assocs. v. Koch Oil, Inc.,* 2004 ND 117, ¶ 7, 680 N.W.2d 634.

We review this appeal under our standards for summary judgment, which is a procedure for promptly resolving an action on the merits without a trial if there are no disputed issues of material fact or inferences to be drawn from undisputed facts and if a party is entitled to judgment as a matter of law. *Bender v. Aviko,* 2002 ND 13, ¶ 4, 638 N.W.2d 545. Whether a trial court properly grants summary judgment is a question of law, which we review de novo on the entire record. *Fetch v. Quam,* 2001 ND 48, ¶ 8, 623 N.W.2d 357. A party seeking summary judgment bears the initial burden of showing there are no genuine disputes regarding the existence of material facts. *Id.* at ¶ 9. On appeal, we view the evidence in the light most favorable to the party opposing the motion. *Id.* at ¶ 8.

[¶ 7] This Court reviews declaratory judgment actions under the same standards as other cases. N.D.C.C. § 32-23–07; *see also Hanneman v. Continental Western Ins. Co.,* 1998 ND 46, ¶ 19, 575 N.W.2d 445 (citing *American Hardware Mut. Ins. Co. v. Dairyland Ins. Co.,* 304 N.W.2d 687, 689 (N.D.1981)). "Interpretation of an insurance contract is a question

of law, fully reviewable on appeal." *Hanneman*, at ¶ 20 (citing *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 12, 559 N.W.2d 846). This case "involves the legal effect of a contract term, on appeal we fully review the issues by independently examining the insurance policy to determine if there is coverage." *Hanneman*, at ¶ 19 (citing *Martin v. Allianz Life Ins. Co. of North America*, 1998 ND 8, ¶ 9, 573 N.W.2d 823 (1998)).

[¶ 8] In *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omitted), this Court summarized our standards for construing an insurance policy:

Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

[¶ 9] "Exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer." *Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 10, 658 N.W.2d 363 (citing *Western Nat'l Mut. Ins. Co. v. Univ. of North Dakota*, 2002 ND 63, ¶ 7, 643 N.W.2d 4). Although this Court construes exclusionary provisions strictly, we do not automatically construe every insurance exclusion provision against an insurer and in favor of coverage for the insured. This Court will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 181 (N.D.1994). The insured still must prove he falls within an exception to the exclusion in order to benefit from coverage.

[¶ 10] The first issue presented by Lagodinski is whether the Kenworth should have been covered under the farm policy because, although motor vehicles are excluded from coverage, there is an applicable exception to this exclusion.

[¶ 11] The applicable exclusion Nationwide argues operates to preclude coverage for Klettke's claim against Lagodinski provides:

A.  COVERAGE L—Farm Liability and COVERAGE M—Medical Payments to Others do not apply to "bodily injury", "property damage" or "personal injury":

. . .

2.  arising out of:

a.  the ownership, maintenance, use, loading or unloading of "motor vehicles" or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured".

. . .

This exclusion does not apply to farm equipment other than "motor vehicles", "recreational motor vehicles" or "motor vehicles" not subject to "motor vehicle" registration because it is used exclusively on an "insured premises".

[¶ 12] The policy defines "motor vehicle" as "a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an 'insured premises' is not a 'motor vehicle.'" Lagodinski argues the Kenworth is not subject to motor vehicle registration requirements because it was adapted solely for farm purposes and thus the motor vehicle registration statute does not require registration. We disagree.

[¶ 13] The Kenworth was designed for travel on public roads; thus, the vehicle was a motor vehicle as defined by the plain language of the policy. Even if this Court was not persuaded the plain language of the policy excluded coverage, the Kenworth was subject to motor vehicle registration under North Dakota's motor vehicle registration statute. If the Kenworth owned by Lagodinski fits under either of these definitions, it is excluded from coverage under the terms of the policy. The vehicle was being used off the farm premises, was not adapted exclusively for farm purposes, and was subject to motor vehicle registration under North Dakota statute.

[¶ 14] Lagodinski argues the exclusion does not operate to exclude policy coverage in this case because the Kenworth was modified to be used exclusively for farm purposes and was only taken off the farm premises to be used for transporting chemicals and water from the farmstead to fields. Lagodinski asserts modification of the Kenworth into a vehicle used exclusively for farm purposes operates to remove the vehicle from the motor vehicle definition of the policy. Lagodinski further asserts the vehicle was not subject to registration requirements, due to its change in use and location of the accident.

[¶ 15] "In construing insurance policies, we have interpreted policies in light of relevant statutory provisions." *Western Nat'l Mut. Ins. Co. v. Univ. of North Dakota*, 2002 ND 63, ¶ 20, 643 N.W.2d 4. The code provides every motor vehicle is to be registered annually with a number of exceptions. Section 39-04-18(1), N.D.C.C., provides:

1. Except as provided in this section, every motor vehicle as defined in section 39-01-01, trailer or semitrailer designed to be towed by a truck or truck tractor, and farm trailer operated or intended to be operated upon any highway, road, or street in this state must be registered annually with the department. Any vehicle being operated on highways, roads, or streets of this state must display license plates as furnished by the department upon payment of the fees prescribed in this chapter.

. . .

2. The following motor vehicles may be operated upon the highways, roads, and streets of this state without being registered, under such limitations as are herein specified; provided, however, that whenever the department determines that it is to the best interest of the state of North Dakota and determines by reciprocal agreement or otherwise that as great or greater privileges are not granted North Dakota residents while traveling in other states or territories, the department may cancel or limit the application of any exception to residents or motor vehicles from such other state or territory:

   a. Farm tractors as defined in section 39-01-01, special mobile equipment and road rollers and other road construction or maintenance machinery that cannot be operated on the highways and streets of this state in a normal operating manner.

N.D.C.C. § 39–01–01(18) defines "farm tractor" as "every motor vehicle designed and used primarily as a farm implement for drawing plows, moving machines, and other implements of husbandry."

[¶ 16] Lagodinski asserts the Kenworth's modification to haul chemicals and water qualifies it as a "farm tractor" and makes the vehicle exempt from motor vehicle registration requirements. Lagodinski further argues mounting a water tank on the trailer portion makes it an "implement[] of husbandry" under N.D.C.C. § 39–01–01(18). Finally, Lagodinski asserts the Kenworth is exempt from registration because is was designed and primarily used as a farm implement for moving machines. Lagodinski asserts the water tank on the trailer is a machine within the statutory scheme and exempt from motor vehicle registration.

[¶ 17] Lagodinski argues the statute is intended to encompass the way in which he was using the tractor because it provides, "every motor vehicle designed and used primarily as a farm implement." N.D.C.C. § 39–01–01(18). Lagodinski conceded in his brief and at the district court level he had not made any physical modifications to the Kenworth after he stopped registering the vehicle. In order to be exempt from registration requirements, the statute requires the vehicle to be "designed and used primarily as a farm implement." N.D.C.C. § 39–01–01(18).

[¶ 18] Lagodinski relies on *Heitkamp v. Milbank Mut. Ins. Co.*, 383 N.W.2d 834 (N.D.1986) to argue the Kenworth should be covered under the terms of the farm policy. In *Heitkamp*, an insured sought indemnity for a motor vehicle accident on a highway involving a pickup used primarily for farm purposes. *Id.* at 835. This Court ultimately found the pickup should be covered. *Heitkamp* held the pickup should be covered under the terms of the master farm policy because in a special verdict form, the jury found Milbank's agent misrepresented the scope of the coverage provided by the farm policy. Additionally, the district court found the policy language in *Heitkamp* to be sufficiently ambiguous as to have more than one meaning.

[¶ 19] The analysis contained in *Heitkamp* is not applicable to this case. In *Heitkamp*, the district court specifically found the policy language ambiguous. *Id.* at 835. The district court in this case did not find the language of the policy capable of multiple interpretations. Additionally, the two policies do not contain the same language. In order for this Court to interpret the terms of a policy in favor of the insured, the language of the policy must contain an ambiguity. *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 27, 575 N.W.2d 445.

[¶ 20] In this case, the Kenworth was not both designed for and primarily used as a farm implement. The primary purpose of the design of a Kenworth is to transport cargo for long distances. Under Lagodinski's interpretation, every semi-tractor/trailer could be exempt from motor vehicle registration even without physical modification because the vehicle holds the mere potential to be used as a farm vehicle.

[¶ 21] Under the plain language of the policy, Lagodinski's use of the Kenworth made it subject to motor vehicle registration requirements and the vehicle does not fit within the exception to the motor vehicle exclusion of the policy.

### III.

[¶ 22] The next issue raised by Lagodinski is the Kenworth should be covered by the farm policy because N.D.C.C. § 32–15–03.2 provides all land up to the centerline of a public street or highway is owned by the adjoining owner and the

State only possesses an easement for the public highway.

[¶ 23] Lagodinski argues the accident took place on his farm because a public highway abutting a tract of land rented by Lagodinski for his farming operation is farm property under the terms of the farm policy. Lagodinski relies on a combination of two statutes to argue the accident actually took place on land farmed by Lagodinski and should be covered by the farm policy:

No transfer to the state of North Dakota or any of its political subdivisions of property for highway purposes shall be deemed to include any interest greater than an easement, and where any greater estate shall have been so transferred, the same is hereby reconveyed to the owner from which such land was originally taken, or to the heirs, executors, administrators, or assigns of such owner. Such reconveyance shall be subject to any existing contracts or agreements covering such property, and all rights and benefits thereof shall accrue to the grantee.

N.D.C.C. § 32–15–03.2.

[¶ 24] Lagodinski argues N.D.C.C. § 32–15–03.2, read in conjunction with N.D.C.C. § 47–01–16, operates to extend coverage because the accident took place exclusively on Lagodinski's farm. Section 47–01–16, N.D.C.C., provides, "[a]n owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."

[¶ 25] This Court looks first at the language of the insurance contract to determine whether coverage existed. "When interpreting an insurance policy, we look first to the insurance contract itself." *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 27, 575 N.W.2d 445 (citing *Martin v. Allianz Life Ins. Co. of North America*, 1998 ND 8, ¶ 9, 573 N.W.2d 823; *Northwest G.F. Mut. Ins. Co.*

*v. Norgard*, 518 N.W.2d 179, 183 (N.D. 1994)). "If the contract is self-explanatory and subject to only one meaning, our inquiry is at an end." *See Hanneman*, at ¶ 27 (citing *Martin*, at ¶ 9); *see also* N.D.C.C. § 9–07–02 (stating, "the language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity").

[¶ 26] The plain language of the exclusion does not contain an ambiguity requiring this Court to supply an interpretation. The exclusion contains limited exceptions which do not provide coverage for motor vehicles on public roads or highways, regardless of whether the State's interest is treated as an easement or a fee interest. Lagodinski is asking this Court to read in an exception to the exclusion which would render the insurance policy exclusion meaningless.

[¶ 27] Lagodinski is mistaken in his assertion the language of the statute controls rather than the language of the policy. The language of the policy precludes coverage for the Kenworth because it was "designed for travel on public roads or subject to motor vehicle registration." Highway 13, where this accident occurred, was undisputedly a public road.

[¶ 28] Lagodinski argues the Kenworth should be covered because it was used exclusively for farm purposes, or exclusively on the farm. We disagree. During oral argument, Lagodinski conceded the collision occurred more than two miles from Lagodinski's farmstead. Lagodinski also conceded the driver had to cross over several strips of highway that did not abut land owned or rented by Lagodinski. The Kenworth was not used exclusively on the farm premises. Rather, it was used on public highways traveling to and from the farmstead. Lagodinski's arguments, while creative, fail to address the operative language in the policy that precludes coverage, which provides the "exclusion does

not apply to farm equipment other than 'motor vehicles.'" The policy further defines "motor vehicles" as those subject to motor vehicle registration under North Dakota statute. As previously discussed, the Kenworth was subject to motor vehicle registration under the terms of the statute.

## IV.

[¶ 29] Attempting to employ the doctrine of reasonable expectations, Lagodinski argues it was reasonable for him to assume the Kenworth was covered under the farm policy. The doctrine of reasonable expectations is an interpretive tool employed by courts which considers the experience and knowledge of the insured when purchasing insurance. *Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 71, 658 N.W.2d 363 (Sandstrom, J., concurring in part and dissenting in part). As proof of his expectation of coverage, Lagodinski offers a letter written on his behalf by the Nationwide agent. In a criminal action initiated by the State for failure to have appropriate insurance, Lagodinski defended by submitting this letter. The letter stated:

> In reference to the above case, we are submitting this letter on behalf of our insured to state that he did indeed, have liability coverage regarding this incident on May 22, 2000. Coverage was extended under his farmowners' policy which was effective June 5, 1999 and is still in force with Allied Insurance Company out of Des Moines, Iowa. Victor Lagodinski is an insured through our office and we are his agent licensed with Allied Insurance Company here at First Southwest Insurance Agency.

The charges against Lagodinski were dismissed. Lagodinski argues the letter from the agent is proof of his expectations regarding coverage for the policy.

[¶ 30] Lagodinski argues the letter illustrates his expectations of the policy coverage. There are several problems with this argument. First, the letter was written well after Lagodinski entered into the policy contract; therefore, it could not have been the basis of the bargain. Second, Lagodinski's testimony on his expectations of the policy coverage indicates he did not expect coverage for motor vehicles when he entered into the insurance contract. In his deposition, Lagodinski gave this testimony:

> Q: And in 2000, what was you understanding—maybe you didn't have an understanding at that point in time—of whether or not any of your vehicles were insured under your farm liability policy through Allied?
>
> A: Anything that wasn't, you know, licensed or used, just used on the farm, was insured through Allied.
>
> Q: All right. When you say "not licensed or used or just used on the farm," what do you mean?
>
> A: Whatever was used, didn't go on the road.
>
> Q: All right. In other words, if it just—
>
> A: Used as a farm vehicle.
>
> Q: All right. And where did you get that understanding, that that was how the coverage under the Allied farm liability policy worked?
>
> A: I guess I just naturally thought that.

Lagodinski's recollection as to whether the coverage extended to vehicles used off the farm premises is unclear at best. In his brief, Lagodinski points to evidence of his state of mind after the accident; however, none of the evidence indicates his subjective intent at the time he entered into the insurance contracts. Lagodinski failed to establish evidence of reasonable expectation of coverage, even if the doctrine applied.

[¶ 31] This Court has expressly declined to adopt the doctrine of reason-

able expectations. *See Western Nat'l Mut. Ins. Co. v. Univ. of North Dakota*, 2002 ND 63, ¶ 19, 643 N.W.2d 4 (citing *Center Mut. Ins. Co. v. Thompson*, 2000 ND 192, ¶¶ 11–12, 618 N.W.2d 505). Additionally, this Court would have to determine the language of the policy is sufficiently ambiguous in order to apply the doctrine. *RLI Ins. Co. v. Heling*, 520 N.W.2d 849, 854–55 (N.D.1994). The district court specifically declined to find, and Lagodinski has not established, the insurance contract is ambiguous.

[¶ 32] Even if this Court had adopted the doctrine of reasonable expectations, Lagodinski cannot rely on the doctrine to provide coverage under the terms of the contract because he failed to demonstrate the contract was ambiguous.

### V.

[¶ 33] As his final issue, Lagodinski asks, "[d]id the District Court err in making factual findings on Motion for Summary Judgment concerning the reasonable expectations of Lagodinski?"

[¶ 34] In its ruling on the motion for summary judgment, the district court stated, "[t]he Court will find that Lagodinski had no expectation of coverage on the roads adjoining or adjacent to the fields." Lagodinski argued it was err for the district court to make what appears to be a factual finding on a motion for summary judgment.

[¶ 35] In the context of a motion for summary judgment, the district court should not grant summary judgment when a dispute exists over a genuine issue of material fact. *Boe v. Rose*, 1998 ND 29, ¶ 15, 574 N.W.2d 834. Although the district court may have improperly commented on Lagodinski's expectations of coverage in the context of summary judgment, the district court did not err in its ultimate decision. In order for Lagodinski

to establish his expectations are a genuine issue of material fact which should preclude summary judgment, he must demonstrate the terms of the policy are ambiguous invoking the doctrine of reasonable expectations. *Grinnell*, at ¶ 71. As previously discussed, Lagodinski has failed to establish the terms of the policy are ambiguous.

[¶ 36] We affirm the district court.

[¶ 37] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, concurring in the result.

[¶ 38] In ¶ 13 of the majority opinion, we appear to do some fact-finding by stating that the Kenworth tractor was "not adapted exclusively for farm purposes." Under N.D.C.C. § 39–04–18, if the Kenworth tractor was a "farm tractor" as defined under N.D.C.C. § 39–01–01, it would not need to be registered. I do not know why the Kenworth tractor cannot be a "farm tractor." Many farmers use tractors such as that to haul wheat, potatoes, sugar beets, etc. As long as the tractor does not leave the "insured premises," it should fit the exception to the exclusion. In ¶ 20, I feel we are fact-finding again when we say the primary purpose of a Kenworth tractor is to transport cargo for long distances.

[¶ 39] I am of the opinion that a Kenworth tractor could be a "tractor" and not subject to registration, but that the exception to the exclusion requires it be used exclusively on "insured premises." The accident, however, occurred on a public highway and not on "insured premises," and therefore, I concur in the result.

[¶ 40] Mary Muehlen Maring.